May it please the Court, my name is Anne Vojts and I represent the plaintiff appellants in this case. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. The District Court in this case erred in dismissing the complaint. It erred in applying Delaware law in doing that, and it erred in doing so based on its wrong conclusion that there was no conflict over fundamental policy between Delaware and California law. Accordingly, this Court should reverse and remand. The core issue here is whether under which law should apply, because there's a conflict when it comes to California law and Delaware law. California law recognizes an equitable limitation that stems from the fiduciary duty that limits what a majority shareholder can do, that limits their exercise of statutory or contractual rights. They may have a right to do something under a contract, but they still have to comply with their fiduciary duty. Kennedy, how is the choice of law clause different in this case from the choice of law clause which was held by the California Supreme Court to be effective to eliminate any fiduciary duty in Nedloyd? Well, Your Honor, I think Nedloyd actually reads differently. If you look at footnote 6 in Nedloyd, what it said was it actually didn't address Hong Kong law or what the status of a fiduciary duty was under that. What it dealt with was it said there wasn't a conflict there. It said there may also be instances when the chosen state has a materially greater interest in the matter than does California, but enforcement of the law of the chosen state would lead to a result contrary to a fundamental policy of California. In some such cases, enforcement of the law of the chosen state may be appropriate despite California policy to the contrary, but careful consideration of California policy and other states' interests would be required. And they said no such question is present there. But here, if you look at the language in Amundsen and you contrast it to the language in Mimic. Kagan. Oh, I'm sorry. Go ahead. Keep going. There's no way, I think, to square those two cases. In Amundsen, they specifically said a majority shareholder may not use their power to control corporate activities to benefit themselves alone or in a manner that's detrimental to the minority. Any use to which they put the corporation or their power to control it must benefit all shareholders proportionately. And under the allegations of the complaint here, Mentor did not do that. It used its power to delay and stymie a potential acquisition. It hired away one of Calipto's important people. It refused to allow Calipto to take steps that would have improved its financial situation, and it forced Calipto into a waiting game so that they could acquire their shares at essentially half price. Because of the way that the put-call option was structured, they knew precisely at what point the cost would drop, and they knew by how much. Is it your claim that Mentor somehow kept the earnings of the corporation down so they could exercise their call option? In the complaint, we include the fact that they wouldn't allow them to discount in order to get more cash flow in. The fact that they'd hired away some of the important people, one of the important people there. We also noted the fact that when you were looking at one of the things that they also did was they refused to let Calipto go out and look for additional funding or get additional financing. They said they themselves would do it, and then, in fact, they did not. So, yes, our position is that they took every step that they could. So they affected the growth rate? Yes. You allege that? So we allege that. And where do you allege that? Yes, in our complaint, we allege the fact that they had hired Calipto's best salesman away, that they also refused to allow them to seek outside financing. We allege the fact that when synopsis came and expressed interest, that there was a board meeting after board meeting. Can you give me a citation to your complaint? Certainly. Most of it appears at ER 64. Thank you. And if the Court would like, I can certainly go into additional detail on that. But with respect to those. So your position is that Ned Lloyd doesn't apply because Ned Lloyd wasn't involved with examining a fundamental California policy, and we are here. Yes, that's correct. And that fundamental California policy is Jones v. Amundson? That is correct. You're not claiming that it's 1668 of the Civil Code? We're relying on Amundson and California Code and the fact that California law is consistently recognized, as summarized in Amundson. The answer to my question is yes, you are not claiming 1668 is the basis of a fundamental policy, which is here being violated? I think we're relying on California law as a whole, as summarized in Amundson. Can you give me an answer to that? We are. With respect to. . . Can I ask a question about Ned Lloyd again? Didn't Ned Lloyd indicate that under California choice of law principles that it was permissible for the parties to choose Hong Kong law, or are you saying it didn't hold that? What it said in Ned Lloyd was that the parties hadn't identified a conflict. And so it was looking specifically at. . . The parties hadn't identified. . . I'm asking whether or not they had chosen in their contract to apply Hong Kong law. They had chosen. Okay. And didn't Hong Kong law not recognize the rights of minority shareholders? So that's the. . . To sue for a fiduciary duty breach, or is that not correct? So that is the oddity of the Ned Lloyd opinion. In the majority opinion, they don't actually really talk about what Hong Kong law held. If you look at. . . They said that in the appellate decision, which obviously is now unsightable and can't be relied on under California state law. But the majority opinion itself sort of posited this world in which there wasn't a fundamental conflict. But if you look at California law and what it says about fiduciary duty, there's no way to square that with the idea that there isn't a conflict if, in fact, Hong Kong law said that there was no fiduciary duty. Exactly. Therefore, Ned Lloyd was enforcing a choice of law provision in a fiduciary duty situation in which there was a conflict between California and Hong Kong law. Is that right? I think we disagree. We think that the Court's language about the fact that there was no conflict. Where is the. . . So if the Court looks at. . . Even. . . I think you read that before, didn't you? I did. But were they clearly saying there was no conflict on this point, so that you're saying they were somehow misled because you're saying there really was a conflict between how minority shareholders can sue majority shareholders, but they didn't seem to recognize that? Or were they talking about a different part of California law, such as the right to choose choice of law provisions in contracts? I mean, that's part of California law, too, isn't it? It is. And that's why when Ned Lloyd says that you apply the 187 analysis when you're considering whether, in fact, a choice of law provision is enforceable. And here, the crux of our dispute is whether when it comes to the existence of a fundamental conflict, whether there is one between Delaware and California. And we'd submit that if this Court looks at the language in Nemec where they said specifically that based on a claim that the company redeemed the plaintiff's shares in a way that acted in the director's benefit and not in the plaintiff's benefit, that in violation of their fiduciary duty, they said that doesn't establish an enforceable breach of fiduciary duty. By contrast, in Amundsen, they specifically concerned themselves with a majority shareholder's power to take advantage, to act in a way that's detrimental to the minority shareholders. That's a consistent concern that's animated both California and Federal cases. And so that's your California public policy is the protection of minority shareholder rights, correct? It is. And so don't you still have to show that California would have a materially greater interest than the forum that the parties chose? Yes, and I think that's consistent, the interest here. Why? Why does California have a materially greater interest in enforcing its public policy than Delaware? Because California has consistently recognized its concern with having its residents take advantage of it. But what struck me is that I do not understand you to be challenging the original stockholder agreement as the result of, as itself a breach of fiduciary duty. Is that right? That's correct. Right. But that's where the concern about, you know, disproportionate power would come in, right? You would challenge the contract itself as a breach of fiduciary duty because of disproportionate power, but you're not doing that. So once you take the contract as a given and, in fact, you're relying upon it, then what is the disproportionate power that you're relying on? It's the disproportionate power that exists. It had the put-call option and its position on the board, its ability to control the decisions that Calipto made. Yes, but that was all in the contract. And if you're not attacking the contract, then what? Well, I think this is where it's analogous to Thrasher. I'm sorry? This is where this is analogous to Thrasher, a case that's cited in our briefing. Right. Where they said, yes, this man had a right to collect his debt, but what he couldn't do was to do it in a way that was intended to harm the company, to act in a way that was detrimental to the minority shareholders. And that is sort of the crux of the issue here. Whether or not you have a statutory or contractual right, is it conditioned by your fiduciary duties? Well, I understand that, but all I'm saying is that once you take the contract as a given, then it seems to me that you are at least very close to Ned Lloyd. And my understanding is that the main way that you're trying to distinguish Ned Lloyd was that the fiduciary duty there was to the corporation and not to the minority shareholders. Is that right? So essentially, there are three ways we distinguish Ned Lloyd. I'm sorry, what? Essentially, that's one of the ways we would distinguish Ned Lloyd. Right. But then you say there was no – where is this language that you say says there was no conflict in law? That I don't see. If I might get the case, please. Yes. You said footnote 6, but footnote 6 was about a different – was discussing the fiduciary cause of action. It was discussing the test in general, I guess. And it didn't say there was no conflict. So where are you saying that they thought there was no conflict? Thank you. So it says there may also be instances – so this is on footnote 6, which appears on page – if you're looking at the Cal-4th version, it would be on page 466. And I can give you the other side if you would. That's where it cites to. But it's talking about the proper test. Well, that's the test. But where do you – why do you? Because if there is no such conflict, and then that's where the foot – that's actually where the footnote ties in. The footnote ties into the description of the test. It's talking about if there's a materially greater interest, and we will decline to enforce a law contrary to the State's fundamental policy. And here, both Ned Lloyd declined to find that there was a materially greater interest, and it concluded there wasn't, in the majority opinion, they don't address the existence of an actual conflict between Hong Kong law and California law. And I think when this Court, by contrast here, looks at Nemec, looks at Delaware law, and then looks at the language of Amundsen, and looks at the way that that's been implied in subsequent cases like Thrasher or Rincon, it's impossible to square those two, to say that there isn't a conflict and that it isn't fundamental. I apologize. I see I'm running very short on my time. I'm certainly happy to answer your question, Judge Burke. With respect to whether California has a materially greater interest, don't you need to show under the – don't you have to apply the internal affairs doctrine? And I don't know if you've discussed that. If you want to reserve your time, that would be fine with me. I can answer that question very quickly and then hopefully reserve a minute if I might. So with respect to the internal affairs doctrine, it has an exception if some other state has a more significant relationship. And an example of the Court considering that is in Lideau. In this case, Calypto had its principal place of business here. Some of the parties – some plaintiffs in this case were individual residents of California. And so given that, given the weight of that, we think that the gravitational weight of the case pulls it towards California law. And if I might, I'd like to reserve the balance of my time. Okay. Thank you very much. Thank you. Good morning, Your Honors. Mary Christine Sangaila of Haynes & Boone on behalf of the Apelli Mentor Graphics. In this case, we have an investment in a startup, Silicon Valley Tech Company, like Calypto, which is inherently risky. On average, about 25 percent of those yield a profit. And Mentor Graphics here took a chance by making a substantial capital investment in Calypto, which made software that was complementary to Mentor's products. And Mentor's interest in Calypto went beyond that towards financial as well as partnering with them and sharing technology and confidential information. And in exchange for Mentor's contributions to Calypto's shareholders, which included two international venture capital firms that are plaintiffs in this case, they freely and voluntarily agreed to terms of a stockholder's agreement. That included a call option for Mentor and a put option for the original shareholders. I think we know the facts. And so with that agreement that cabined the risk, that was the agreement that was in place. Not only did it cabin the risk. Do you want to go along with the facts, even though I told you that I think we know the facts? Okay. Okay. So anyway, that agreement had a Delaware choice of law provision. And that is the provision that the appellants are seeking to avoid. That Delaware law is perfectly fine for them at that point in time. But now when they would like to argue that they have a separate fiduciary duty claim, they're seeking to apply a different law. But even if they were to apply California law, their claims would have equally failed. First, they cannot jettison or rewrite the terms of that agreement through a purported fiduciary duty claim, because the contours of that are neither recognized in Delaware nor California law. While both states recognize a duty by majority shareholders to minority shareholders, neither state recognizes a duty that's alleged here, which is by majority shareholders to ensure that the minority receive a significant or specified profit. So. Well, in this case, isn't it the concern that the majority shareholders essentially took action that was disadvantaging the minority shareholders? Well, essentially, their claim, which they make clear, their damages that they seek, is the difference, really, between what they did receive through the exercise of the call option, pursuant to the party's contract, and their view of whatever they could prove might have been a higher value earlier. And so it's that difference. And the party's agreement was very clear in terms of when and how those options could be exercised. They were on both ends exercised at the sole discretion of the party exercising it, and they could be exercised at any time. So. They're not claiming that there was an obligation to accept or even to pursue the possible buyout by this other company earlier on, right? In other words, they're not the fiduciary duty claim is not that they should have gone forward with the buyout that was proposed sometime earlier. All right. Well, don't answer. Well, no. I mean, I think it's probably two different things. One thing that they clearly say is that mentors should have exercised that call option at the time that somebody. That's what I'm trying to clarify. They're focusing on the call option and not on the buyout itself. Correct. Yes. It's all about the terms, the call option, which was laid out. I mean, what you can most usefully do for me in this case is to tell me, as between the Niebauer case, which does seem to indicate that whether you have majority and minority shareholders, that a contract provision is not binding under California law in the face of fiduciary duties, and the Neloi case, which is a choice-of-law case, but does seem to emphasize the importance of enforcing contracts. They're both California court appeal cases. Neither is a Supreme Court case. They both the Niebauer case is much later. Essentially, what we have to do is decide what California Supreme Court would do with all this, and how do we do that? Well, Ned Lloyd is a California Supreme Court decision. No, you're right. I'm sorry. I was wrong about that. It is a California Supreme Court case. Right. So we do have Ned Lloyd, which emphasizes the importance of enforcing the strong policy that California also has in terms of the agreement to the parties that freely and voluntarily reached, and enforcing choice-of-law clauses in them. And we're trying to do that. But it is, if I'm right, not a case about minority shareholders? No, it is not. Okay. Does that matter as to the internal governance, the strength of the internal governance? No. I mean, the party, the appellants have to clear several hurdles in order to revive their complaint here, and to apply California over Delaware law just in terms of the fiduciary duty claim. But also then with regard to the internal affairs doctrine, that not only supports the application of Delaware law, but does not – internal affairs is an independent ground to support the dismissal. But isn't internal affairs most often have to do with voting and decision-making by the corporation? This isn't that. This is a decision-making by the majority shareholders vis-a-vis the minority shareholders with regard to the stockholders agreement. I'm not at all sure it is an internal affair within the meaning of that doctrine. Well, it does to the extent that everything relates back to the underlying contract that the parties had with regard to the call option, because their theory is about the manner in which the call option was exercised. And that has to do thoroughly with the internal affairs of the corporation and the agreement that everyone entered into to begin with. Kagan, do you think that all relationships with regard to shareholders, even if they don't deal with the corporation acting qua corporation, are internal affairs? In other words, when you have a fiduciary duty claim regarding the corporation, you're dealing with the internal affairs of the corporation. The corporation, they should have done this for the corporation rather than that for the corporation. Here what we're dealing with is the rights of shareholders, right, not the rights of anybody running the, not directly dealing with the running of the corporation in any way. Well, it's, it's, that question's a little blurry here because a lot of the shareholders were also in fact directors of the company, but you know it. Okay, but the particular issue was not about their director role, it was about their shareholder role. Correct. Are issues about shareholders' internal affairs, I mean, in general, are the rights of shareholders the internal affairs of the corporation? Well, they, they can be, and I think that in case, in this case, given the theory, they are, given the theory of the plaintiff's case, they are. The theory of the plaintiff's case is qua shareholder, not qua director, right? I'm sorry, I couldn't hear you. The, I think, theory of the, I'm having a hard time because every time I ask you a question, I'm asking Greek, so I think I'll just stop asking questions. Thank you. I just couldn't hear part of that. Well, that, that's, but this is the fifth time. Okay. Do you think, counsel, that minority shareholders could enter into a shareholder agreement where they would effectively waive all of their rights to ever sue for fiduciary duty violations? Well, there, there is the California case that says that that is not appropriate. A complete waiver of the minority shareholder rights is, is, is an issue, but there is not a complete waiver in this case. There is no waiver in, in, in this. Well, there's somewhat, wouldn't you agree that there's somewhat, I wouldn't necessarily call it a waiver, but that the, the nature of the agreement was such that it enabled the majority shareholder to benefit itself at the expense of the minority shareholders, didn't it? Well. By waiting until the price had gotten lower and then buying it for the lower price, and also, the argument is they interfered with the purchase by a third party that would have been at a higher price. I mean, at some point, isn't this a situation where the minority shareholders are finding themselves subject to an agreement that waived their right to sue for a violation of the majority's fiduciary duty to them? Well, no. You're talking about an agreement that the parties freely reached well before this, which provided equal, equal cabining of risk to both of them. There was a put option and a call option, and the plaintiffs chose not to exercise the put option, which they could have done at that time. Instead of requiring, you know, instead of saying mentors should have exercised it, they equally could have exercised it at that point in time. The record isn't really clear what they would have gotten out of that if they had done that. Do you know what they would have gotten as far as whether the price would have been higher if they had exercised the put option? It, it, it, it, minor signs it would have been higher than when mentor exercised the call option. Okay. Thank you. Yes. And, and, as the Delaware court- Pardon me. Let me, let me get this straight. The claim is that mentor waited after a certain date in which the growth rate didn't go to 20% and then exercised its call option at a multiple which was productive of a smaller price. Right? Now, are you telling me that the put option that the minority shareholders had could have been exercised before that date so that the, the now appellants could have gotten a higher price but they didn't? Yes. They could have done that. They had this equal corollary right to call for mentor to purchase their shares at their discretion at any time. Yes. But the question is what the rates are, which, as Judge Berg says, it's not clear in the record at all what that would have yielded at the, during the time period after the failure of the buyout option. Right? We don't know. Yes. There's a, there's a calculation. You could do some calculation. Your position is that they could see that the growth rate wasn't going to achieve 20% and they could have put the, the shares before the end of that year and gotten  Correct. Okay.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. And so under the California Supreme Court's decision in Medloyd, plaintiffs have directed the court to no California statute or constitutional provision designed to preclude freedom of contract in this context. And not having done so, then they cannot hope to prevail on their choice of law argument. Well, in Niebauer, which is a court of appeals case, the waiver was found to violate 1668, the exoneration prohibition of the civil code. Right? Why is that the same here? Well, first, I, I don't believe that we are talking about a waiver in this case. We're talking about a free negotiation. The effect is the same, isn't it? I mean. The effect is the same as 1668. Well, in a waiver, they give up their, their rights to, to claim any breach of fiduciary duty. And if you apply Delaware law, they give up their right to, to claim any fiduciary duty. What's the difference between a waiver and a contract which has the same effect? I, I think that, that it, it isn't the equivalent to, to a waiver. We're talking about you have to marry the, the contract with the fiduciary duty claim. And as Ned Lloyd makes clear, it needs, it needs to be a specific theory, not some amorphous fiduciary duty theory. There has to be a specific theory as to why you should, you know, override the party's choice with the contract in this case. And we, there is, there is no recognized duty that the plaintiffs have, have put forth under any of the California cases that would show that, that there would be, you know, some kind of duty that could even override, that either even exists a duty, much less that it is such a fundamental issue of state law and policy. Kennedy, wasn't there a duty to protect the shareholders' rights to get a higher price for their shares, the minority shareholders' rights to get a higher price for their shares in Jones v. Amundson? Jones talks about that, but that Jones is distinguishable from, from this case. In that case, you're talking about completely shutting out and excluding the minority stockholders. So Jones says, hey, if you completely cut out one part, the minority stockholders so they can't get any profit or any benefit from their shares, that is a breach of the fiduciary duty. But that is not what we have here. So taking 50 percent away from them is not a breach of fiduciary duty, 100 percent? It has to be 100 percent? That is the case law that exists.  It's an original reading of Jones. Well, I don't know about that. This Court in Sachs v. Worldwide Press, 809 F. Second 610 and 615, agreed with that, saying that Jones was distinguishable on that ground, that they were excluded entirely. Okay. I think you're over your time. Thank you. Yes. Your Honor, if I might address two brief points quickly. First, with respect to whether this is a waiver, I think, yes, this is essentially what plaintiffs are arguing, or I'm sorry, defendants are arguing, is saying that the fiduciary duties, and that's clearly inconsistent with the language of Jones. Jones specifically said that no matter how absolute in terms your power is and no matter how meticulous you are to satisfy technical requirements, you cannot use that power to your personal advantage and to the detriment of the shareholder, of the minority shareholders and the creditors. And that's precisely what happened here. We are not arguing. But Jones doesn't deal with the contract question, right, with the question of whether if there's a contract that gives particular authority, the fiduciary duty overrides whatever discretion is in the contract. Niebauer possibly does. Jones doesn't deal with that, right? Correct. Niebauer deals with a complete waiver. Jones deals with how you exercise your right to do something, as does Thrasher, where the Court recognized that the majority shareholder had a right to collect the debt, but they couldn't do it in a way that was intended to and, in fact, did harm the minority shareholders. But that didn't deal with a contract between the shareholders and the minority and majority shareholders, right? No, that was the company and the majority shareholder. That was where he had a debt or he held debt from the company. The debt was, you know, dealing with third parties. Right. But he was using it in a way to try and harm the minority shareholders. Well, that's right. But it didn't deal with any claim that there had been an agreement that by the shareholder that the majority shareholder could do this particular thing. Correct. But in this case, we think, if this Court looks at the issues, we think that there was a fiduciary duty, they were obligated to follow it. They didn't. We adequately pled that in the complaint, and for those reasons this Court should reverse and remand. If the put option had been exercised, what would have happened? So I note that this is somewhat outside the complaint, but my understanding is that the value would have been significantly lower. The way it was structured was that if the plaintiffs in this case were to exercise their option, they would have made significantly less. Less than what? Less than. So less than the price in April had. Well, right. But what about the price in September? I think it would have been somewhere in the room. It would have been somewhere around the range of what the call option is. But again, I think that's not in the complaint, and I can't speak to that accurately. All right.  Thank you very much. If the Court has no further questions, thank you very much. The case of Cal v. Mentor Graphics is submitted, and we'll take a short recess. Thank you.
judges: Berzon, Bea, Berg